UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

KEITH McDAY

      Plaintiff,

    -against-                           03 Civ. 5277 (CM)(PED)

B. TRAVIS, et al.,

      Defendants.

———————————————————————x

MEMORANDUM DECISION AND ORDER REJECTING THE
MAGISTRATE JUDGE'S RECOMMENDATION, DENYING
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

Before the Court is the Report of The Hon. Paul E. Davison, U.S.M.J., in which the

learned Magistrate Judge (1) concluded that the mandate of the United States Court of Appeals

for the Second Circuit remanding this case, following that court's vacatur of a prior award of

summary judgment in Defendant the City of New York's favor, does not require the entry of

judgment in Plaintiff Keith McDay's favor, and so (2) denied Plaintiff's motion for summary

judgment in his favor, but (3) concluded that the State's provision of evidence via a witness

pursuant to Fed. R. Civ. P. 30(b)(6) was not sufficient to warrant granting summary judgment in

Defendant's favor.

The Court has received and reviewed the objections filed by both sides.

I thank Judge Davison for all the time he has expended and for his careful consideration

of the thorny issues presented by these cross-motions. I believe that the learned Magistrate's

Copies mailed/faxed/handed to counsel on _7/ 9 /10_

legal analysis of the doctrines of res judicata and collateral estoppel and their application to the present circumstances is correct.

However, after extended consideration, the Court believes that Judge Davison erred in concluding that the mandate rule was not a bar to this Court's consideration of whether McDay actually had the parole revocation hearings required by New York law, so as to render the parole warrant that lies at the fulcrum of this case valid. Careful review of the Second Circuit's decision in what we have come to call "McDay II" convinces me that the Circuit's statements about the invalidity of the parole warrant were not meant to be understood as assumptions, but as conclusions based on what the Court of Appeals understood to be undisputed facts.

I am also convinced that the Corporation Counsel fumbled an opportunity to obtain remand for the purpose of augmenting and clarifying the record with regard to whether certain parole revocation hearings required by state law (and the Constitution) were or were not held in McDay's case. This is unfortunate, because undisputed evidence that was belatedly assembled by the City *after this case was remanded* reveals that the requisite hearings actually took place. This, of course, undermines the Circuit's conclusion that the parole warrant became invalid.

So Plaintiff's claim of unlawful imprisonment ought not go forward.

But it seems that it will.

**The Underlying Facts**

McDay filed this action in July 2003. On May 3, 1993, he was convicted of Attempted Rape in the First Degree. He was sentenced to four to eight years imprisonment. McDay was released in 2000, but violated his parole shortly thereafter and was re-incarcerated.

Plaintiff was released on parole for the second time on November 9, 2001. In the days following his release, Plaintiff was presented with, and signed, two parole-related documents,

2

which indicated (inconsistently) that his maximum release date was either July 21 or July 23, 2002.

On December 11, 2001, a month after his release, Plaintiff was arrested for felony possession of marijuana and assaulting a parole officer. He was held on these charges until July 9, 2002, when they were dismissed on speedy trial grounds. However, Plaintiff was not released on that date. Instead, he was told that there was a parole hold on him, and that he would be released on July 23, 2002. Defendant held Plaintiff at Rikers Island following the dismissal of the charges until July 23, 2002, when he was released.

Plaintiff sued the City and several parole and corrections officers and commissioners. He alleged, insofar as is here relevant, that he was deprived of his constitutional right to be free from wrongful imprisonment (Fourth Cause of Action) and that the City negligently kept him in custody after he should have been released (Fifth Cause of Action). The Fourth Cause of Action pleads an exclusively federal claim; the Fifth Cause of Action, a state law claim (albeit not a state law wrongful imprisonment claim, which is an intentional tort, not a negligence-based tort).

When the case was originally in this Court, I understood Plaintiff's wrongful imprisonment argument to be that he should have been released on July 21, 2002 (which, according to one of two conflicting documents, was his maximum parole expiration date), not on July 23, 2002 (which, according to the other document, was his maximum parole expiration date). My understanding is apparent from the tenor of the decision dismissing the case against the City and the individual City defendants (Warden Eastman and Commissioner Fraser). The City understood this as well, and apparently it still does; it persists in arguing that this two day period is what this case is about. However, since that time, the case has taken several unexpected turns.

3

**Procedural History**

In April 2004, prior to the taking of any discovery, the City of New York and individual defendants Eastman and Fraser moved for summary judgment. They argued that McDay had been held pursuant to a "facially valid" parole warrant that the City was required to honor. They did not argue that the warrant was actually valid, only that it was facially valid. The individual defendants made arguments concerning the lack of any allegation of personal involvement that are not relevant to the matters before this Court.

This Court granted defendants' motion and dismissed the case as against the City and the two named defendants on the ground urged by the City.

McDay appealed. In a summary order, the Court of Appeals affirmed the judgment in favor of the individual defendants. McDay v. Travis, No. 05-4269-pr, 2007 U.S. App. LEXIS 26762 (2d Cir. Nov. 19, 2007) ("McDay I"). However, noting that the parole warrant "*may* have been illegal under State law" and "*may* not have constituted sufficient authority to detain McDay" beyond the date when the his felony drug charges were dismissed (which was not July 21, but July 9), the Court appointed counsel for McDay and solicited amicus briefs addressing, "whether we can and should remand the matter to the district court for augmentation of the record or other further proceedings." Id. at *3-5, 7 (emphasis added). As this court had never considered whether the warrant was or was not in fact invalid under state law, and there was nothing in the record addressing the issue, the Circuit's interest in remand is understandable.

However, when a second summary order issued following the consideration of additional briefs and also what the Court of Appeals called "supplemental materials," McDay v. Travis, 303 F. App'x 928, 929 (2d Cir. 2008), the panel did not remand the matter to this Court for augmentation of the record. Instead, the Court of Appeals vacated this Court's judgment in favor

4

of the City of New York, because, "The materials now before us demonstrate that the District Court incorrectly concluded that the parole warrant serving as the basis for plaintiff's detention 'was still in effect' as of July 21, 2002, the conclusion of plaintiff's maximum term of imprisonment." Id. (emphasis added). In an effort to understand the scope of the mandate, have obtained the supplemental materials that were provided to the Court of Appeals; I see no new factual submissions, so I assume that the "materials now before us" means the arguments in the supplemental briefs that were filed with the appellate court. In those briefs, it seems that no one disputed McDay's counsel's affirmative assertion that McDay had received no parole revocation hearings.

On the precise issue that had been decided by this Court, the Circuit announced that it could not conclude that the plaintiff had been held pursuant to a warrant that was "facially valid" because (1) the actual warrant was not in the record, and (2) Mr. McDay did not concede its existence.[1] Id. at 931. That alone offered a reason to vacate the award of summary judgment to the City.

But the Court of Appeals went further. It noted that New York law required the State Division of Parole to conduct a probable cause hearing within 15 days of the issuance of a parole warrant, and to convene a revocation hearing within 90 days of the probable cause hearing. If those requirements were not timely met, a parole warrant was automatically rendered void, which meant a prisoner could not legally be held pursuant to the warrant. Because the record before the Circuit (as was true of the record before this Court) contained no evidence that these procedural requirements had been followed the appellate court concluded that no such hearings were held. It found as "undisputed" that between July 9, 2002 (the date the drug charges were

---

[1] Of course, not conceding the existence of the parole warrant is a far cry from introducing evidence sufficient to raise a genuine issue of fact as to its existence, but the fact remains, the warrant was not in the record before me, or before the Court of Appeals, and it is still not in the record, because it cannot, apparently, be found.

dismissed) and July 23, 2002, the only basis for detaining Plaintiff was a parole warrant that had

become invalid months earlier on December 28, 2001. Id. at 929-30. It thus concluded that "any

parole warrant in the City's possession ceased to be 'facially valid' on or about December 28,

2001, after plaintiff was not afforded a probable cause hearing within fifteen days of its

issuance," id. at 931, and, "[T]he City lacked legal authority to hold plaintiff on the basis of the

warrant after that date [i.e., December 28, 2001]," id. at 930.

     The Circuit then addressed whether this meant that the City could be held liable to

McDay under 42 U.S.C. § 1983. It opined that McDay might have been detained pursuant to a

City policy or custom of refusing to release anyone held pursuant to a New York State parole

warrant "until the warrant is lifted by the State of New York Division of Parole." Id.

Characterizing this, too, as a matter of undisputed fact, the Circuit said, "Rather than serving as a

basis for summary judgment in favor of the City, these uncontradicted assertions might prove to

be grounds for the City's liability under 42 U.S.C. § 1983 if they reflect a City policy that

resulted in a violation of plaintiff's due process rights." Id. at 931.

     The court did not undertake any discussion of Plaintiff's state law claim for negligence.

     In sum, the Court of Appeals announced that, "[T]he District Court incorrectly concluded

that the parole warrant serving as the basis for plaintiff's detention 'was still in effect' as of July

21, 2002, the conclusion of plaintiff's maximum term of imprisonment." Id. at 929. It remanded

"for proceedings consistent" with its order. Id. at 932. As is the Court of Appeals' custom, it did

not specify what those proceedings should be.

     It bears noting that there is no indication in the City's supplemental brief on appeal –

which this Court has obtained from the Court of Appeals and reviewed – that the City took up

the Circuit's invitation to seek remand for augmentation of the record. On the contrary, the City

begged the Court of Appeals *not* to remand the matter, because it was the State Division of Parole, not the City, that was responsible for holding parole revocation hearings, and no one associated with the Division of Parole had ever been served with process:

> Without jurisdiction over the State, this Court should be hesitant to remand this matter to the District Court in order to allow appellant to augment his record in an attempt to defeat the City's motion for summary judgment. Appellant charted the course of his own litigation; he should be [sic] allowed to reap any bounty on the back of the City for his lack of due diligence to serve what could be characterized as the necessary party, the State of New York and its Parole Board.

(City's Supplemental Brief on Appeal, dated October 2, 2008, at 42.). In the absence of any party's request that the record -- which contained no information whatever about hearings -- be augmented, it was only logical for Court of Appeals to conclude that the lack of any parole revocation hearings was "undisputed."

**Post-Remand Proceedings**

After remand, the City finally undertook some discovery, and so learned a great deal that it ought to have known years earlier. In particular, documents produced pursuant to a deposition subpoena issued to the New York State Department of Parole – which had not previously been approached by anyone representing the City – revealed that (1) both a probable cause and a final revocation hearing had been held on the parole warrant in question, (2) the hearings were held within the time period required by statute, (3) McDay was well aware of these hearings (indeed, he was summoned to the revocation hearing repeatedly, but signed documents refusing to attend, and so it was finally held in his absence), and (4) an Administrative Law Judge had ordered Plaintiff held until his maximum release date – which, the ALJ stated, was July 23, 2002 (not July 21, 2002). The City apparently knew none of this during the entire pendency of the appeal;

7

it allowed the appeal to be argued on the basis – apparently assumed by all parties – that the State had failed to afford McDay his parole hearings.

The City's failure to know anything about the facts prior to 2009 came home to roost on July 6, 2009, when Plaintiff moved for summary judgment (Docket No. 41). Invoking the doctrines of res judicata and collateral estoppel, he argued that the City was precluded by the Court of Appeals' decision in <u>McDay II</u> from establishing that it had a lawful basis for confining Plaintiff after felony drug criminal charges against him were dismissed on July 9, 2002.

The City cross-moved for summary judgment in its favor.  (Docket No. 46.)  It argued that <u>McDay II</u> had been decided on an incomplete factual record and prior to discovery (conveniently overlooking that it was the City's own decision to forego discovery prior to moving for summary judgment, and then to decline to seek remand for augmentation of the record). Urging that nothing in the Court of Appeals' decision precluded the City from proving what had actually happened, the City, for the first time, placed before a court evidence that the requisite parole hearings were in fact timely held, which meant that the parole warrant valid and the continued detention after July 9, 2002 was proper.

The Court referred the matter to Magistrate Judge Davison for a Report and Recommendation.

**Magistrate Judge Davison's Report**

The Magistrate's report, issued on May 25, 2010, recommended that Plaintiff's motion for summary judgment be denied and that the matter be set down for trial on the issue of the City's liability – not because there was any real dispute about what had happened, but rather because the documents that had been introduced into evidence were not properly authenticated,

and because the City's Rule 30(b)(6) witness was not a person with actual knowledge of the events in suit.[2]

Judge Davison rejected McDay's former adjudication arguments, whether arising under the doctrines of res judicata and collateral estoppel or under the mandate rule.

Dismissing any suggestion that res judicata or collateral estoppel barred litigation of the warrant's validity, the learned Magistrate Judge noted that the Court of Appeals did not reverse this Court's decision granting summary judgment to the City, or direct that judgment be entered in favor of McDay. Rather, it vacated the award of summary judgment and remanded to this Court for further proceedings – not the usual procedure in a case where the Circuit determined that judgment should be entered for the party who prevailed before it. Magistrate Davison concluded that the Court of Appeals' decision "lacks the requisite finality to support Plaintiff's invocation of either preclusion doctrine." (Report & Recommendation, dated May 25, 2010 (Docket No. 60) (the "Report"), at 7.) He also observed that a decision denying summary judgment does not ordinarily have preclusive effect, Kay-R Electric v. Stone & Webster Constr., 23 F.3d 55, 59 (2d Cir. 1994).

Cutting the other way, however, was the following troubling statement from McDay II:

> In this case, it is undisputed that . . . plaintiff received neither a probable cause hearing nor a parole revocation hearing, meaning that, under New York law, the parole warrant was invalid fifteen days after the warrant's issuance . . . .

---

[2] I would not have accepted the Magistrate Judge's conclusions about the incompetence of the City's evidence, but rather than press the point the City has submitted authentications for the documents, all of which are official records kept in the ordinary course of the business of the Division of Parole and the Department of Corrections. The testimony of the Rule 30(b)(6) witness was competent because the rule is designed to permit the introduction of binding testimony by a non-percipient witness. There was, however, no need to delay this ancient case any further by remanding to the Magistrate so that he could reconsider his recommendations in view of the authenticated evidence.

McDay II, 303 F. App'x at 929-30. McDay's *pro se* argument, articulated for him by the Magistrate Judge in its strongest possible terms, was that this Court would violate the mandate rule if it were to consider evidence showing that this statement was not true.

The mandate rule holds that "where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." Burrell v. United States, 467 F. 3d 160, 165 (2d Cir. 2006) (internal quotations and citations omitted). Because of the mandate rule, "the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals." Id. (quoting United States v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993)). A corollary to the mandate rule is that "if an issue was not part of the appellate decision, a trial court may consider the matter." Id. (quoting Minicone, 994 F.2d at 89). In deciding whether an issue remained open for reconsideration on remand, the trial court is to look to both "the specific dictates of the remand order" and "the broader spirit of the mandate." United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001) (internal quotations and citation omitted).

The Magistrate Judge concluded that nothing in the mandate barred this Court from considering whether the hearings were or were not actually held. He relied principally on the Court of Appeals' statement that it had merely, "Assum[ed], for the sake of argument, that the State in fact neglected to ensure that proper procedural safeguards were followed," McDay II, 303 F. App'x at 930; he also noted that the Circuit "drew all factual inferences that could rationally be drawn, in favor of [McDay]," id. at 928, and had vacated the judgment in favor of the City and remanded, rather than reversing and directing that judgment be entered for Plaintiff. These elements of McDay II led the Magistrate to conclude, "[I]t cannot be said that the appellate court, by remanding the case for unspecified 'proceedings consistent with' its order,

10

contemplated that the legal basis for plaintiff's detention could not be further explored upon remand." (Report at 10 (quoting McDay II, 303 F. App'x at 932).)

Therefore, Magistrate Davison recommended that this Court conclude that the Court of Appeals "expressly did not find the facts as to these matters to have been conclusively determined," and deny Plaintiff's motion for summary judgment. (Id.)

Judge Davison also recommended that the City's cross-motion for summary judgment be denied – but only because of the evidentiary rulings discussed above in Footnote 2. In view of this Court's disposition, it is not necessary to engage in an extended discussion of that aspect of the learned Magistrate Judge's decision.

**Plaintiff's Objection and the Court's Conclusion**

Plaintiff objects to Judge Davison's conclusion. And the Court, albeit with extreme reluctance, is constrained to agree that the mandate rule bars the City from proving that the legally required parole hearings took place – even though it is quite clear that they did.

I look first to the "specific dictates" of the mandate, Ben Zvi, 242 F.3d at 95. The language in McDay II on which Judge Davison seized certainly seems consistent with the result he reached. At one point in the summary order, the Court of Appeals quite explicitly "*[a]ssum[ed]*" that the State had failed to follow proper procedural safeguards (i.e., hold the requisite hearings) in McDay's case. An assumption is not a conclusion.

However, the language about "[a]ssuming" has been read out of context. The rest of the summary order (which is not so summary) persuades me that the Circuit actually concluded that no probable cause or parole revocation hearing took place – and a review of the arguments made to the court convinces me that the Circuit reached this conclusion because no one ever suggested that it might be incorrect.

11

Even Judge Davison noted the appellate court's flat statement that the lack of any probable cause or revocation hearing was "undisputed." (Report at 8 (quoting McDay II, 303 F. App'x at 930).) Coupled with the panel's announcement that "[T]he District Court incorrectly concluded that the parole warrant serving as the basis for plaintiff's detention 'was still in effect' as of July 21, 2002, the conclusion of plaintiff's maximum term of imprisonment," McDay II, 303 F. App'x at 929, it appears that, as far as the Court of Appeals was concerned, no valid parole warrant was in effect when the drug charges against Plaintiff were dismissed and he otherwise became eligible for release. It is difficult to reconcile the learned Magistrate Judge's recommendation with these two "specific dictates" in the decision on which the mandate rests.

The summary order contains other language – quite a bit of it, in fact – compelling the conclusion that the Court of Appeals actually found, as a matter of undisputed fact, that no parole hearings were held. To cite four more such instances:

> The Supreme Court has held that parolees facing revocation are, under the Due Process Clause, entitled to a preliminary hearing and a revocation hearing. *As noted above, plaintiff received neither of these during his eight months of incarceration.* Id. at 930 (emphasis added) (internal citation omitted).

> Here, the City held plaintiff beyond his maximum term of imprisonment – exclusively on the basis of *a parole warrant that, under New York law, expired approximately eight months prior to his release*. Id. (emphasis added).

> [W]e are aware of no legal authority – and the City has cited none – suggesting that a municipality may not be liable for detaining a parolee on the basis of a parole warrant that is "facially valid," but is in fact void as a matter of law. Id. at 931.

> Drawing all reasonable inferences, as we must, in favor of plaintiff, we are not free to conclude that [plaintiff] was imprisoned pursuant to a parole warrant that was facially valid in all relevant respects, [but] [i]n any event, as noted above, *it appears that any parole warrant in the City's possession ceased to be "facially valid" on or about December 28, 2001, after plaintiff*

12

> *was not afforded a probable cause hearing within fifteen days of*
> *its issuance.* Id. (emphasis added).

Nothing in any of these statements suggests that the Court of Appeals was simply "assuming" that no hearings were held; these statements are assertions of found fact.

Against this backdrop, the "assumption" language on which the Magistrate Judge rests his finding needs to be reconsidered. What the Circuit said was, "Assuming, for the sake of argument, that the State in fact neglected to ensure that proper procedural safeguards were followed, the City has pointed to no State law or State policy that compelled plaintiff's detention after the dismissal of the criminal charges against him." Id. at 930. The Court of Appeals was addressing the City's argument that it could not possibly be liable to Plaintiff for holding him beyond his release date pursuant to an invalid warrant, because the State, not the City, was responsible for ensuring that McDay received the parole hearings required by law. The only thing the Court of Appeals assumed was that the State, rather than some representative of the City, was negligent in not holding hearings. The Court did not assume that hearings were not held. Rather, it flatly stated, over and over again, that hearings were not held, and it reasoned from that premise to the conclusion that the parole warrant ceased to be valid from and after December 28, 2001. The language on which Judge Davison relied, when reinserted into its proper context, does not support his recommendation.

It is true, as the Magistrate Judge noted, that the Court of Appeals declined to find the warrant to be facially valid for reasons that had nothing to do with the lack of any hearings – it relied on the fact that the warrant was not in the record (so it could not be examined) and that Plaintiff did not concede its existence. But that is beside the point. The Court of Appeals did not stop with a finding that related to the parole warrant's facial invalidity; it went further, and

13

addressed the actual validity of the parole warrant. It concluded that the warrant was actually invalid from and after December 28, 2001.

The learned Magistrate was also persuaded toward his recommendation by the language of disposition used by the Circuit. The Court of Appeals did not reverse and direct the entry of summary judgment in Plaintiff's favor; instead, it vacated and remanded for further proceedings consistent with its order.

However, vacatur and remand appears to have been the appropriate result, even though the Circuit's decision effectively disposed of the parole warrant's validity, because there are at least three reasons why it would not have been appropriate for the appellate court to enter judgment for McDay, or direct this Court to do so.

First, nothing in McDay II, or the mandate that issued pursuant thereto, precluded the City from raising any other defense it might have to McDay's claim: McDay II placed only the issue of the warrant's validity (in light of the failure to hold hearings) off-limits.

Second, in McDay II, the Court of Appeals did not reach a final conclusion about the City's Monell liability. Plaintiff's federal claim arises under 42 U.S.C. § 1983, so the City can only be liable to McDay for its failure to release him if that failure resulted from some policy or practice; under constitutional tort law, a municipality is not vicariously liable for the actions of its subordinates. Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658 (1978). The Court of Appeals noted that one affidavit in the record suggested that the City might have a policy or practice of refusing to release prisoners who had parole warrants lodged against them until one of three things happened: the state parole officer physically goes to Riker's Island to lift the warrant; a Supreme Court order vacates or dismisses the warrant; or the State Division of Parole sends a warrant lift to the City's Department of Corrections. McDay II, 303 F. App'x at

14

930-31. The Circuit was plainly concerned that the City might have abdicated some responsibility to determine whether a parole warrant lodged against a prisoner in City custody continued to be valid, relying instead on someone from outside (either a Parole official or a judge) to advise it of the warrant's status at any given time. While the "undisputed" fact that the parole warrant had ceased to be valid no later than December 28, 2001, meant that the City had no legal basis to detain plaintiff from and after July 9, 2002, it remained for this Court to determine whether the circumstances of McDay's continued imprisonment justified the imposition of Monell liability on the City.

Finally, there remains the question of McDay's damages; even if all other issues fell away, further "proceedings consistent with this order" could well have encompassed nothing more than a damages trial.

Therefore, the remand language need not be read as directing this Court to revisit (or, rather, to visit for the first time) the issue of the parole warrant's validity on and after July 9, 2002. The Court of Appeals plainly viewed that issue as settled beyond peradventure.

For these reasons, I conclude that the "specific dictates" of the mandate require me not to revisit the Court of Appeals' conclusion that no probable cause or parole revocation hearings were held.

The "spirit of the mandate," which this Court must also consider, counsels the same result. The "spirit of the mandate" suggests that the Court of Appeals remanded this matter so that this court could develop a record about the City's policies and practices with regard to parole warrants lodged against City prisoners – not so that I could reopen matters the Court of Appeals deemed settled. Indeed, the "spirit of the mandate" is 180 degrees opposed to reopening an inquiry into an issue the Court of Appeals considered to be "undisputed."

15

Finally, as I indicated earlier, I actually reviewed the materials that were submitted to the Second Circuit between its two summary orders. My review of the briefs on appeal reveals that the arguments that led to the issuance of McDay II were predicated on the assumption that the State had failed to conduct the hearings that were necessary to render the parole hold valid. Plaintiff's appointed appellate counsel asserted the lack of hearings as a matter of fact and the Corporation Counsel did not challenge that assertion as a matter of fact. In that context, it would have been surprising for the Court of Appeals to reach any conclusion other than the one the panel reached: no hearings were held, so the warrant became invalid. The spirit of the mandate needs to be considered in the context of the appeal as argued, and it was argued as though it had been conceded that the hearings never took place.

In short, I conclude that the mandate rule bars the City from proving that what actually happened actually happened.

The reluctance I have about reaching this conclusion is that Mr. McDay gamed the Court of Appeals. The City has (finally) managed to assemble considerable evidence about McDay's situation, and that evidence reveals the following: (1) the parole warrant did actually issue (although it still has not been found); (2) Plaintiff, for all his refusal to concede the warrant's existence, knew that it had issued; (3) the warrant was lodged in Plaintiff's records at Rikers Island within days after his December 2001 arrest; (4) a probable cause hearing was held shortly after Plaintiff arrived at Rikers; (5) Plaintiff was summoned at least three times to parole revocation hearings but refused to come for various reasons; (6) the revocation hearing was finally held without him (which is permitted by law); (7) an Administrative Law Judge determined that Plaintiff's parole should be revoked, and that he should remain in jail through his

16

maximum release date on the prior offense; and (8) according to the ALJ, Plaintiff's maximum release date on his 1993 conviction was July 23, 2002 – the very day that McDay was released.

In short, that which the Court of Appeals found to be undisputed is indisputably false. The parole warrant that was lodged against McDay was actually valid on July 9, 2002, when the felony drug charges against plaintiff were dismissed. As a result – and whatever its policy concerning warrants might be – the City had a legally valid reason to detain McDay for the additional two weeks after July 9, 2002 that he remained at Rikers.

The problem is that the City did not gather this evidence from the State Division of Parole, or even from NYCDOCS (which is to say, from itself), *before* making its motion for summary judgment. Indeed, it did not gather the evidence until after the Court of Appeals handed down McDay II. Had the City done its due diligence in a timely manner, it would have won the case. Instead, it went forward with an ill-considered dispositive motion on an incomplete record – and now appears to be precluded from proving the truth.

It is plainly the City's fault, and no one else's, that it finds itself in this pickle, for the Court of Appeals offered it a way out. Before deciding McDay II, the Circuit asked for briefing *"with specific attention to whether [the court] can and should remand the matter to the district court for augmentation of the record."* McDay I, 2007 U.S. App. LEXIS 26762, at *5 (emphasis added). If ever there were a moment when a litigant should have asked for remand to augment the record, it was this moment. The lawyers for the City apparently *did not know* whether McDay did or did not have the parole revocation hearings required by law. But they did know, from reading McDay I, that the Circuit was worried that parole revocation hearings might not have been held. Since there was no evidence in the record one way or another on this point, the

17

case was in the perfect posture for remand. This court would have ordered all relevant records produced; the matter would have been cleared up.

But as we now know, the City did not suggest remand for that purpose –to the contrary, it argued against remand – and Plaintiff (who knew exactly what had happened, and so thus knew that the requisite hearings had been held) did not ask for remand either.[3] As a result, I am constrained to hold proceedings that are consistent with an opinion predicated on a demonstrably false conclusion.

It is hard to understand why the attorneys for the City did not perform some rudimentary due diligence into McDay's situation before it made the original summary judgment motion. It is virtually impossible to comprehend why the City did not educate itself when the Court of Appeals issued McDay I and sought further briefing. And until I read the City's supplemental brief on appeal, it was unfathomable to me why the City did not seek recall or modification of the mandate once it took its belated discovery and learned the truth.[4] However, after reading the City's supplemental brief on appeal, I now understand that the City -- having "charted the

---

[3] I want to make it clear that I do not tar appointed counsel with their client's failure to tell them the whole truth and nothing but. They are honorable lawyers, who were entitled to rely on the City's failure to contest the assumption that no hearings were held.

[4] "A motion to recall or modify the mandate may be made at any time and is referred to the judges who heard the appeal." Fine v. Bellefonte Underwriters Ins. Co., 758 F.2d 50, 53 (2d Cir. 1985). Not surprisingly, the movant's burden on such a motion is extreme: the power to recall a mandate "is to be exercised sparingly . . . and reserved for exceptional circumstances. The sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies." Aponte v. City of N.Y. Dep't of Corr., No. 09-2634-cv, 2010 U.S. App. LEXIS 9988, at *3 (2d Cir. May 17, 2010) (internal quotations and citations omitted).

    For defense counsel in a civil action to fail to apprise himself of the facts before selecting a litigation strategy strikes this Court as exceptional indeed – albeit not in a way that cuts in favor of the City. However, the Rule 56.1 Counter-Statement of Facts that McDay filed in opposition to the City's motion for summary judgment reveals his awareness of the parole warrant and the hearings held thereon; his silence in the face of the Court of Appeals' erroneous conclusions hardly earns him a gold star. I originally thought that, if approached, it was possible that the Circuit would recognize that it was gamed and might wish to undo the damage. In view of the City's performance on appeal – especially the argument it made in response to the Circuit's question about the propriety of remand for augmentation of the record – I now view that as doubtful.

course of [its] own litigation" (to quote itself) -- might have been embarrassed to make such a motion.

For my part, this Court is constrained to carry out a mandate that has already issued. The Second Circuit has decided that the parole warrant in this case became invalid as of December 29, 2001, because the State failed to hold hearings required by state law and the Due Process Clause. I have no ability to revisit the matter. I thus grant Plaintiff's motion for summary judgment to the limited extent of resolving the issue of the validity of the warrant against the City.

However, this does not mean that I can grant McDay's motion in its entirety. On his federal claim, there remains the question of whether <u>Monell</u> liability attaches because Plaintiff was held pursuant to some City policy of practice. The Affidavit of Jorge Torres could give rise to the inference that City DOCS knows nothing about whether timely parole revocation hearings were held when making decisions about holding a defendant on a parole warrant. But Torres avers that DOCS is made aware when the State Division of Parole lifts a parole warrant, and does not hold a prisoner after the warrant is lifted. If it were State procedure to lift a parole warrant when revocation hearings were not timely held, then there would be no City policy that kept a prisoner who had no hearings in jail. There is no evidence in the record one way or the other on this issue. Nor is there any evidence about what if any procedures exist between City DOCS and State Parole for exchanging/sharing information about warrants.

So taking it as established (as I must) that Plaintiff did not receive any hearings, I cannot determine whether he was held pursuant to some sort of unconstitutional policy. The policy may well have been for State Parole to lift a warrant if hearings were not timely held -- and we now know that the reason the warrant was not lifted in this case is that hearings *were* timely held.

Furthermore, the evidence introduced by the City concerning Plaintiff's situation at the very least raises a genuine issue of fact for trial. The City's exhibits suggest that there are persons at Rikers who are aware of parole revocation hearings (if only because they have to transport a prisoner to those hearings), and who therefore might have been under the impression that they were empowered to hold Plaintiff until his maximum release date because those hearings were held and the warrant was not subsequently lifted. That, too, remains to be explored.

Finally, plaintiff has asserted a claim for negligence. As to that, there is no evidence whatever in the record, and no argument made; I cannot dispose of this claim.

Ironically, if Plaintiff had pleaded a pendent common law claim for wrongful imprisonment (an intentional tort), there would have been a way to cut the Gordian knot that this case has become. Enforcing the mandate, I could and would have awarded Plaintiff summary judgment on any such claim, and everything else would have been dismissed as surplusage. But there is no way to read Mr. McDay's common law claim as anything other than a negligence claim. Frankly, I am not entitled to pretend that his complaint says anything other than it does, since he has made no effort to be honest with this court or with the Court of Appeals about his own circumstances. Neither will I permit amendment of the pleadings at this late date, seven years into the life of this case.

**Conclusion**

Plaintiff's motion for summary judgment (Docket No. 41) is granted in part and denied in part as set forth above. The City's motion for summary judgment (Docket No. 46) is denied. The Clerk of the Court should remove these motions from the Court's list of active motions.

The parties are directed to convene a settlement conference before the Magistrate Judge

IMMEDIATELY.

This constitutes the decision and order of the court.

Dated: July 9, 2010

_____
U.S.D.J.

BY FAX AND FIRST-CLASS MAIL

21